UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ELSIE I. LYBECKER, a
single woman,

               Plaintiff,

   vs.

UNION PACIFIC
CORPORATION,

Defendants.

NO.  CV-13-0231-LRS

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

    **BEFORE THE COURT** are the following cross-motions:
Defendant Union Pacific Corp.'s ("Union Pacific") Motion for
Summary Judgment (ECF No. 46); and Plaintiff's Motion for
Summary Judgment (ECF No. 50).  A telephonic hearing was
held on December 4, 2014.  Jaime Cole and Thomas Christina
participated on behalf of the Defendant Union Pacific;
Arthur Bistline and Mark Ellingsen participated on behalf of
Plaintiff Lybecker.  At the close of the hearing, the Court
took the cross-motions under advisement. The Court has
considered the oral and written arguments of counsel.
///
///

ORDER - 1

**I.  Undisputed Material Facts**

Plaintiff brought this action under the Federal
Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. § 1001, et seq. Plaintiff's claim is based solely
on the statutory penalty provision she asserts against Union
Pacific under ERISA §502(c)(1)(B), 29 U.S.C.§1132(c)(1)(B).

Daniel J. Angel ("Angel"), was an employee of Defendant
Union Pacific Railroad Company. Prior to 2004, Angel had
been married and divorced twice.  Prior to 2002 and during
all material times thereafter, Angel had four children, two
who were biological children (Clayton and Natasha) and two
who were adopted children (Roger and Kevin).  During the
period beginning in 2002 and through at least 2014, both of
Angel's former wives were living.  Prior to and at the time
he went missing, Plaintiff and Angel had a relationship and
maintained a residence together in Spokane, although Angel
had moved out about six months before his disappearance.

On January 1, 2002, and for a considerable period
before that date, Angel was eligible to contribute to the
Union Pacific Corporation Thrift Plan ("Thrift Plan").  On
September 28, 2002, Angel named Plaintiff the sole death
beneficiary of any undistributed portion of his Thrift Plan
account.  On May 31, 2004, and for a considerable period
before that date, Angel was eligible to elect to participate
in a variety of welfare benefit plans subject to ERISA under
the Flexible Benefits Program for Full Time Salaried and

ORDER - 2

Full-Time Hourly Employees of Union Pacific.  One of these welfare benefit plans was the Life and Accident Insurance Program (the "subject plan"), and coverage was issued and administered by Prudential Insurance Company of America ("Prudential").[1]  A benefit of participating in the subject plan was the ability of the participant to secure an insurer's promise to make a payment on account of the participant's death while covered under the plan, and the right of the participant to name the payee at any time before death.

All aspects of claims administration under the subject plan were handled exclusively by Prudential.  At the time specified for distribution of the death benefit, the person most recently named to receive the life insurance policy proceeds receives the proceeds.  A change of death beneficiary was effective as of the date it was signed if and only if it was made on a form created by Prudential and Prudential receives the signed form.

On May 31, 2004 Angel named Plaintiff as the beneficiary under the Life Insurance Plan, on a Prudential form.  Angel had elected to participate in the Life Insurance Plan and the amount of Angel's basic and supplemental life coverage was $481,000.00.  Angel's basic and supplemental Accidental Death coverage was $567,000.00.

---

[1]Defendant Prudential was dismissed on February 28, 2014.  ECF No. 44.

ORDER – 3

On November 14, 2004, Angel's boat was found drifting on Lake Pend Orielle in Idaho with no one on board.  On November 15, 2004, Kootenai County Sheriff's Department interviewed Plaintiff during the course of the investigation.  Plaintiff testified that the investigator told her it would take seven (7) years to obtain a death certificate in Idaho.  She apparently did not question the accuracy of this information.

On November 16, 2004, the Sheriff's Department placed its investigation into Angel's disappearance on the inactive list and registered Angel as a missing adult on the NCIC database until the fall of 2012.

At all times surrounding the events underlying this action, i.e., after November 14, 2004, Union Pacific's Human Resources Department had a Human Resources Service Center ("the Service Center").  Employees of the Service Center had access to information regarding the identity of death beneficiaries, if any, of the Thrift Plan.  Employees of the Service Center, however, did not have access to information regarding the identity of the death beneficiaries, if any, of the Group Life/AD&D Plan.[2]

If a Union Pacific employee's Thrift Plan beneficiary did not contact the Service Center with regard to an employee who had been reported deceased by the employee's coworker, supervisor, or family member, the practice of the

[2]ECF No. 65 at 19-20.

ORDER - 4

Service Center employees was to contact the beneficiary. The purpose of the contact was to inform the beneficiary that he or she was the death beneficiary of the employee's Thrift Plan account.

On December 16, 2004, Union Pacific wrote to Plaintiff indicating that she was the beneficiary of Angel's Thrift Plan, but that to process the account, she needed a death certificate.  Plaintiff contends that Union Pacific did not inform her that she was the beneficiary of Angel's life insurance policy nor that Prudential was the insurance company that provided the life insurance policy. Union Pacific notes that only Prudential had information about death beneficiaries of life/AD&D coverages, because beneficiary designation forms and beneficiary designation change forms were effective only if received by Prudential and employees were not required to send these forms to Prudential through Union Pacific.

According to Plaintiff, after Angel's disappearance, Prudential refused to inform Lybecker of the identity of the beneficiary of Angel's life insurance policy because no death certificate had been issued for Angel.[3]

In 2009, a Union Pacific employee Mary Estrada spoke with Plaintiff by telephone about the letter she (Mary

[3]ECF No. 48-7, Cole Declaration, Exhibit G (copy of a letter dated March 25, 2013, from Plaintiff's counsel to Prudential.

ORDER - 5

Estrada) had sent to Plaintiff dated September 18, 2009. This letter was written to inquire why Plaintiff had not applied for a distribution of Angel's Thrift Plan Account. Plaintiff told Mary Estrada that she could not get a death certificate until seven years after Angel's disappearance. Plaintiff testified that Union Pacific called her each year about Angel's Thrift Plan account "[b]ecause I was the executor of the estate."

Plaintiff states she called Union Pacific, although the dates are not certain, to discuss the 2009 correspondence. Plaintiff states Shawna Smith from Union Pacific would not disclose any information, though, because there was no death certificate.

It is undisputed that Plaintiff did not make any written request to Union Pacific for information or documents relating to the subject plan until after she obtained counsel in the fall of 2012. ECF No. 65 at 21.  The record provides that Plaintiff allegedly made two oral requests, however, in November and December 2004.

On June 14, 2012, Plaintiff filed a Petition in the District Court for the First Judicial of Idaho (In the Matter of Daniel James Angel), consistent with earlier information regarding the 7 year time frame to obtain a death certificate.  Plaintiff requested a judgment declaring Angel deceased after seven and a half years missing.

///

ORDER - 6

On August 15, 2012, Plaintiff retained counsel.  On August 21, 2012, Plaintiff's counsel's paralegal sent an email to Union Pacific to follow up with an email to Shawna Smith regarding Angel's 401(k) distribution for Plaintiff. On September 11, 2012, Plaintiff's counsel's paralegal emailed Shawna Smith at Union Pacific requesting assistance on receiving policy details as she had a "dilemma with Prudential and MetLife."

On September 11, 2012, an Amended Petition for Declaratory Relief was filed on Plaintiff's behalf in Matter of Angel in Idaho state court.  In the Amended Petition, Plaintiff named Prudential as a defendant, alleging that Prudential "is an insurance company who issued a life insurance policy on Daniel James Angel."

On or about September 17, 2012, Shawna Smith from Union Pacific informed Plaintiff's counsel that Prudential was the life insurance provider.  On October 15, 2012, the Idaho state court entered its original Order on the merits in Matter of Angel.  On October 23, 2012, the Idaho state court entered an amended order declaring Angel legally dead.

On or about October 29, 2012, Ms. Shawna Smith of Union Pacific communicated with Plaintiff's counsel that Union Pacific would accept the Declaratory Judgment in place of the death certificate to process Angel's account.

In fall of 2012, Plaintiff submitted her claim to Prudential for the life insurance and accidental death

ORDER - 7

benefits.  On or about October 30, 2012, Plaintiff's counsel obtained Thrift Plan account balance information from Union Pacific.  On November 6, 2012, Plaintiff authorized the distribution of Angel's account balance under the Thrift Plan.  On November 14, 2012, a copy of the Death Certificate for Angel was forwarded to Ms. Shawna Smith of Union Pacific.

On November 14, 2012, Prudential received the beneficiary form, death certificate, sheriff's investigation records, and the obituary of Angel. ECF. No. 48-7 at 5.

On November 29, 2012, Prudential informed Plaintiff that it received a Group Life Accidental Insurance Claim. Prudential further indicated that it could not make a determination of the cause of Angel's death because the death certificate state "undetermined." Prudential stated that the file was being transferred to Prudential's Special Investigation Unit and that a determination should be made within thirty (30) days. Id.

On December 5, 2012, Prudential made the Basic Life and Optional Life benefits of the policy available to Plaintiff in the amount of $405,000. Id.

On December 6, 2012, Plaintiff's counsel received notice directly from Rebecca Wanner (Senior Client Services Specialist for Prudential in Record Keeping Services)that Prudential had paid Plaintiff Basic Life and Optional Life

///

ORDER - 8

Benefits on December 5, 2012, but that the Accidental Life Insurance Benefits required a more extensive investigation.

On or about December 10, 2012, Prudential made the balance of the Basic Life and Optional Life Benefits policy available to Plaintiff in the total sum of $76,000.

On December 26, 2012, Prudential again informed Plaintiff that it could not make a determination of the cause of Angel's death because the death certificate stated "undetermined" and that the file was being transferred to Prudential's Special Investigation Unit and that a determination should be made within thirty (30) days. Id.

On January 23, 2013, Prudential once again informed Plaintiff that it could not make a determination of the cause of Angel's death because the death certificate stated "undetermined." Prudential indicated that the file was being transferred to Prudential's Special Investigation Unit and that a determination should be made within thirty (30) days. Id.

By letter dated January 31, 2013, Prudential denied that it had to pay the Accidental Death Benefits for Angel in the amount of $567,000 on the ground that the manner of his death had been ruled undetermined and no proof existed of bodily injury.  Id.

On February 21, 2013, Union Pacific provided the Summary Plan Description to Plaintiff's counsel, which identified Prudential as the life insurance carrier.

ORDER - 9

On February 25, 2013, Plaintiff's counsel advised Prudential in writing that Prudential was, allegedly, unreasonably and intentionally denying payment of Plaintiff's claim.  Plaintiff's counsel demanded that the claim be approved for payment by March 1, 2013, and that Prudential pay a portion of Plaintiff's legal fees. Id.  On March 8, 2013, Prudential paid the Accidental Life Insurance Benefit in the amount of $567,000.

On March 25, 2013, Plaintiff's counsel wrote to Prudential regarding Ms. Lybecker's dispute with Prudential, and enclosing a draft complaint.  The letter  stated, in part, that payment of the death benefits and acknowledgment that Plaintiff was entitled to accidental death benefits "does not include attorney's fees nor does it address interest on Ms. Lybecker 's money to which she is clearly entitled."  The letter also stated:

> Ms. Lybecker will file the proposed complaint attached to this correspondence if you do not agree to pay her the sum of $350,000 in addition to the sums due under the Accidental Death portion of the insurance policy. The sum of $350,000 is roughly double the amount of interest on the two paid benefits which were due to my client at least by November of 2005 which was one year after the date Mr. Angel disappeared. It is doubled because Prudential likely earned a rate of return on my clients money which more than doubled the rate utilized to calculate the interest owed . . .

///

ORDER - 10

The draft complaint sent to Prudential would have named Prudential as the sole defendant in an action seeking a single, unliquidated sum of money, which amount couldn't be determined.  ECF No. 15-16 (The draft complaint asked that Prudential be ordered to pay over either the profits earned by Prudential on the sums wrongfully withheld by Prudential, or the prejudgment interest on the sums wrongfully withheld by Prudential, whichever sum is greater.)

On May 20, 2013, before the instant action was filed, Prudential paid Plaintiff an additional amount of $389,917.97 as an "interest adjustment", which amount was more than $39,000 higher than the amount Plaintiff had demanded.  Prudential paid Plaintiff the full amount of death/accidental death benefits to which Plaintiff deemed herself entitled, plus interest, totaling $1,437,917.97.

On June 18, 2013, Plaintiff brought this action by filing her Complaint in federal court, listing both Union Pacific and Prudential.  Plaintiff's Complaint and her First Amended Complaint, however, alleged that Prudential, and Prudential alone, wrongfully delayed payment to her of $1,048,000 in death benefits ("As the direct and proximate result of Prudential's conduct complained of herein, Prudential retained funds which rightfully belonged to Plaintiff ...").  ECF Nos. 1, 27.

On January 16, 2014, Plaintiff filed her written request for an order dismissing Prudential from this action,

ORDER - 11

without prejudice and with each party paying its own costs. In support of the motion, it was represented that "...prior to this action, Prudential paid Plaintiff all benefits, with interest, that were owing to her . . ." (ECF No. 40 at 1-2).

## II.  Plaintiff's Motion for Summary Judgment As to Her Requesting Statutory Penalties Against Union Pacific

As limited by her Amended Complaint, Plaintiff seeks a statutory penalty against Union Pacific under ERISA § 502(c)(1)(B) based on two allegations: 1)that Plaintiff became a plan participant on June 7, 2004[4]; and 2) that Union Pacific refused Plaintiff's oral request for information regarding the subject plan.  (ECF No. 27 at 6.)

Plaintiff argues the penalties commenced on the first date that Plaintiff requested the information, which she suggests could be determined at trial. ECF No. 27 at 6, Plaintiff's Amended Complaint.  In the next paragraph of the Amended Complaint, Plaintiff alleges that she is entitled to judgment against Union Pacific for the sum of the statutory penalty from the date on which she first orally requested information on the subject plan to February 21, 2013, for a total penalty of $349,910 (based on the statutory penalty of $110/day as provided by 29 U.S.C. § 1132(c). Id. at 6-7.

Defendant Union Pacific, in its cross-motion and opposition to Plaintiff's summary judgment, asserts that since at least January 16, 2014, Plaintiff has lacked

---

[4]Angel named Lybecker as beneficiary of his life insurance policy on June 7, 2004. ECF No. 51-2, Ex. E.

ORDER – 12

statutory and Article III standing to pursue this action
against Union Pacific.  Union Pacific contends that
Plaintiff was never a "participant" in the subject plan, as
the term "participant" is defined for purposes of ERISA.
Further, Union Pacific asserts, Plaintiff was not a
"participant" or "beneficiary" (as those terms are
defined in ERISA) on June 18, 2013, the date this action was
commenced.

Defendant states that if Plaintiff called the Union
Pacific Service Center in November, 2004, as she claims to
have done, Plaintiff would have been told that she was the
beneficiary of Angel's Thrift Plan account, even if she did
not yet have a death certificate for Angel.[5] If Plaintiff
had inquired about the subject plan, she would have been
referred to Prudential, the sole claims administrator of
that plan and the sole source of information regarding
beneficiaries named by participants in the  subject plan,
without regard to whether she had a death certificate.[6]

Union Pacific's final point of contention is that
before June 19, 2013, Plaintiff had received every benefit
due to her under the subject plan, with what Plaintiff calls
///
///

[5]Defendant's Statement of Facts Nos. 38-43, 62.

[6]Defendant's Statement of Facts, Nos. 8-9, 11-13, 45-49,
62, 65.

ORDER - 13

"fair rate."[7] On or after June 19, 2013, Plaintiff had no cause of action against former defendant Prudential, the sole claims administrator of the subject plan, and lacked standing to bring any claim against Prudential.[8]

**III. Summary Judgment Standard**

To withstand a motion for summary judgment, the opposing party must set forth specific facts to show that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All facts in the record and inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. In the absence of genuine issues of disputed fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**IV. DISCUSSION**

The parties' cross-motions for summary judgment raise the following two issues: (1) whether Plaintiff has standing to pursue her claims; and (2) whether UPC is subject to a

---

[7]Defendant's Statement of Facts Nos. 14-15, 65-66, 68-70, 74-75, 76-77.

[8]Defendant's Statement of Facts Nos. 14-15, 66-67, 69, 70.

ORDER – 14

penalty under ERISA § 502(c)(1) for its failure to timely produce documents.  Each of these issues will be addressed in turn.

**A.  Ms. Lybecker Does Not Have Standing**

To bring an ERISA cause of action for a statutory penalty, a party must have statutory standing.  See § 1132(a)(1)-(10); *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir. 1994).  Under ERISA, only a "participant" or a "beneficiary" is entitled to request plan documents under 29 U.S.C. § 1132(c)(1) and seek penalties for the failure of their production. *Harris*, 26 F.3d at 933.

**1.  Plaintiff Was Not a Participant in the Subject Plan**

Union Pacific asserts that in November 2004, Plaintiff was not a "participant" in the subject plan for purposes of requesting or receiving documents or information under ERISA. ERISA has only one statutory definition of "participant" for use throughout the Act:

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

Plaintiff concedes that she is neither a current nor a former employee of Union Pacific. The Ninth Circuit case law has noted that the statutory definition of "participant" is

sufficiently clear and only employees can be ERISA "participants." *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432, 1434 (9th Cir. 1990).  Thus, Plaintiff could not have been a participant in the subject plan when any alleged oral requests for information were made.

### 2. **In June 2013, Plaintiff Was Neither a Participant Nor a Beneficiary**

UPC argues that Plaintiff has no statutory standing to bring this action for a penalty claim against UPC because §1132(a)(l)(A) provides that a civil action may be brought by a participant or beneficiary only, as determined when the action is brought.  Subsection 1132(c)(l)(B) is the only provision that confers authority for a penalty based on a failure to supply documents following a request(specifically a written request) by a participant (or by a beneficiary if the beneficiary is in pay status).

A plaintiff cannot meet either statutory definition unless the plaintiff "is or may become eligible to receive a benefit" under the plan in issue. 29 U.S.C. § 1002(7), (8). However, at the pleading stage, a plaintiff who alleges a "colorable claim" of entitlement to a plan benefit is treated (at least provisionally) as satisfying the applicable definition for purposes of the standing requirement under Section l132(a).  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

Union Pacific asserts that at the beginning of this case, Plaintiff relied on her claim against Prudential as

ORDER - 16

the source of her "participant" status asserting that she
had a "colorable claim" to life insurance plan benefits
because she was entitled to "the greater of the profits
Prudential earned on her money or interest on that money."
This prayer for relief standing alone is not sufficient to
satisfy the definition of "participant" or "beneficiary"
under the colorable claim test because such claim must be
for a benefit (and not solely interest or penalty) under the
plan.  Before June 18, 2013, Plaintiff had received every
benefit due to her under the subject plan, with what
Plaintiff calls "fair rate" for interest on the money
Prudential earned on that benefit paid fully but not timely.

    Plaintiff does not dispute that the Ninth Circuit has
never held that payment of interest is a "benefit" for
purposes of statutory standing analysis under Section
1132(a)(l).  The Court finds no case law to support the view
that interest is considered a "benefit" in the ERISA sense
of the word. When this action commenced, Plaintiff did not
have any claim to any further payments from Prudential. The
record shows that any claim Plaintiff may once have had
against Prudential was extinguished in May 2013, before
Prudential's dismissal and before this action was commenced.
See "Order Re Motion to Dismiss Defendant Prudential," ECF
No. 44.

    In conclusion, the Court finds that only a colorable
claim to an additional plan benefit might have supported a

finding of Plaintiff's status as a "participant" or
"beneficiary" for purposes of ERISA's exclusive
jurisdictional provisions in Section 1132(a)(1)-(3). It
follows that Plaintiff lacks standing.  Union Pacific is
entitled to judgment as a matter of law dismissing
Plaintiff's claim. See 29 U.S.C. §1132(a)(1)(A).

### 3.  Written Request Never Made by Plaintiff

Even if Plaintiff were a participant or beneficiary at
the time of the commencement of the action, which the Court
finds she was not, Plaintiff failed to make a written
request for documents.

Plaintiff seeks a statutory penalty against Union
Pacific only for an alleged failure to satisfy the
requirements of 29 U.S.C. § 1132(c)(l)(B), and based on two
oral requests allegedly made by Plaintiff to Union Pacific
in 2004. One relevant statute, 29 U.S.C. § 1132(c)(l)(B),
reads:

> (c) Administrator's refusal to supply
> requested information; penalty for failure
> to provide annual report in complete form
>     (1) Any administrator (B)who fails
> or refuses to comply with a
> request for any information which
> such administrator is required by
> this subchapter to furnish to a
> participant or beneficiary (unless
> such failure or refusal results
> from matters reasonably beyond the
> control of the administrator) by
> mailing the material requested to
> the last known address of the
> requesting participant or
> beneficiary within 30 days after
> such request may in the court's
> discretion be personally liable to

ORDER - 18

> such participant or beneficiary in
> the amount of up to $100 a day[9]
> from the date of such failure or
> refusal, and the court may in its
> discretion order such other relief
> as it deems proper.

Another relevant statute, 29 U.S.C. §1025(a) sets

forth the writing requirement for participants (which

Lybecker was not)and beneficiaries:

> (a) Requirements to provide pension
> benefit statements
>
> (1) Requirements
>
> (A) Individual account plan
> The administrator of an individual account
> plan (other than a one-participant
> retirement plan described in section
> 1021(i)(8)(B) of this title) **shall** furnish
> a pension benefit statement--
> (i) at least once each calendar quarter to
> a participant or beneficiary who has the
> right to direct the investment of assets
> in his or her account under the plan,
> (ii) at least once each calendar year to a
> participant or beneficiary who has his or
> her own account under the plan but does
> not have the right to direct the
> investment of assets in that account, **and**
> (iii) **upon written request** to a plan
> beneficiary not described in clause (i) or
> (ii).

29 U.S.C. § 1025(a) [emphasis added.]

Plaintiff concedes that she did not make written

request for the information. However, Lybecker argues she

made oral request for the information and because she became

a plan "participant" as of June 7, 2004 (when Angel named

///

---

[9]See 29 C.F.R. § 2575.502c-1 (increasing the per diem penalty from $100 to $110).

ORDER – 19

her a beneficiary of the subject plan), she was not required to make a written request for information. ECF No. 15 at 3.

Union Pacific argues that the duty to provide documents within 30 days of a participant's or beneficiary's request does not arise under §1132(c)(l)(B) except under specified circumstances. See § 1132(c)(l)(B). One of those specified circumstances is that the plan administrator has failed to provide documents or information within 30 days of receipt of a written request for the documents or information. Id.

The Court finds that the reasoning set forth in *Porcellini v. Strassheim Printing Co., Inc.*, 578 F.Supp. 605 (E.D.Pa.1983) and *Anderson v. Mortell*, 722 F.Supp. 462 (N.D.Ill.1989), is sound and directly applicable to the present action, since, in her amended complaint, Plaintiff asks the court to impose the statutory penalty in § 1132(c) against Union Pacific for technical violations of ERISA. The Court agrees with Union Pacific's position that § 1132(c) is inapplicable because Lybecker failed to comply with the statute's requirement that requests for such information be made *in writing* and directed to the *plan administrator*. *Porcellini*, 578 F.Supp. at 611. Union Pacific did not receive the requests in writing and Prudential (not Union Pacific), was the plan administrator of the subject plan involved.

The court declines to tinker with ERISA's complex regulatory scheme. ERISA has been referred to as a

ORDER - 20

"comprehensive and reticulate" legislative scheme designed to promote the integrity of this country's private pension plans and to protect the vested expectations of plan participants and beneficiaries. *See Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980); *see also Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2d Cir. 1982), *cert. denied*, 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982) ("ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sound plans."). By adopting § 1025(a) Congress has clearly manifested an intent to make plan participants or beneficiaries make requests in writing.  Thus, the court construes the language of § 1025(a) to give effect to legislative intent.[10]

**B.   Statutory Penalty Will Not Be Imposed on UPC**

ERISA contains a disclosure provision that requires a plan administrator to, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the

---

[10]See H.R.Rep. No. 533, 93d Cong., 1st Sess. 12 (1973), reprinted in 1974 U.S.Code Cong. & Admin. News 4639, 5042. Furthermore, the use of the word "shall" is mandatory in statutory construction in the absence of any contrary intention expressed in the statute. C. Sands and N. Singer, 2A Sutherland Stat. Const. § 57.03 at 643-44 (4th ed. 1984).

plan is established or operated." 29 U.S.C. § 1024(b)(4).
Section 1132(c)(1)(B) gives teeth to this disclosure
obligation, rendering a noncompliant administrator liable
for up to $110 per day for failing to produce requested plan
documents within 30 days of the request. *Mondry v. Am.
Family Mut. Ins.*, 557 F.3d 781, 793 (7th Cir.2009); 29
C.F.R. § 2570.502c-1. A penalty is not mandatory, and the
amount, if any, is left to the court's discretion. *Fenster
v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 858 (7th Cir.2002).

To trigger this discretionary power to impose
penalties, a beneficiary must establish that the plan
administrator "was required to make available the requested
information, that the [beneficiary] requested the
information, and that the administrator failed to provide
the information." *Kleinhans v. Lisle Sav. Profit Sharing
Trust*, 810 F.2d 618, 622 (7th Cir.1987).

The Court found above that Plaintiff did not have a
colorable claim to have supported finding that Plaintiff was
a "participant" or "beneficiary" for purposes of ERISA's
exclusive jurisdictional provisions in §1132(a)(1)-(3).
Having found that Ms. Lybecker is not a participant or
beneficiary of the Plan, she lacks standing to bring this
claim under § 1132. *See Crotty v. Cook*, 121 F.3d 541, 544
(9th Cir.1997).

Even if this Court had found that Plaintiff did have
standing, based on the unique facts associated with this

ORDER - 22

case, any untimely production of plan documents was complicated by the fact that Ms. Lybecker unreasonably relied on information provided by law enforcement that she could not obtain Angel's death certificate for 7 ½ years. *See* ECF No. 48-6, Ex. F at 2, Petition.  Therefore, a viable argument could be made that the statutory penalty under § 1132(c)(1) would not apply as such delay by the plan administrator (Prudential not Union Pacific) had causes other than the result of bad faith. Finally, in determining whether to impose a statutory penalty, the Court would look at the significance of any prejudice and harm to Plaintiff from a plan administrator's failure to timely produce the plan documents.  Plaintiff received more than she requested from Prudential, who was voluntarily dismissed without prejudice from this case.

## V.   Conclusion

     Plaintiff cannot satisfy requirements of §1132(a)(1)A) and as such cannot trigger the Court's §11132(c) "penalty power." Thus, Article III's "redressability" requirement is not satisfied in Plaintiff's claim against Union Pacific. It follows that Plaintiff cannot establish Article III standing to pursue her claim against Union Pacific.  Accordingly,

**IT IS ORDERED** that:

     1.   Defendant Union Pacific's Motion For Summary Judgment, **ECF No. 46**, filed on October 15, 2014, is **GRANTED.**

ORDER - 23

Plaintiff's claim(s) are dismissed against Defendant Union
Pacific with prejudice.

    2. Plaintiff's Motion For Summary Judgment, **ECF No. 50**,
filed October 15, 2014, is **DENIED**.

    **IT IS SO ORDERED.**  The District Court Executive is
directed to enter this Order; enter judgment consistent with
this order; and **CLOSE FILE.**

    **DATED** this 12th day of January, 2015.


                ***s/Lonny R. Suko***

_____
               LONNY R. SUKO
      SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 24